FILED

2018 SEP -6 PM 3: 14

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DISTRICT COURT
LE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

CASE NO. 6:18-CV-1458-ORL-31-GJK

**CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware limited liability company,
SERIES 16-05-456, a designated series of
MSP RECOVERY CLAIMS, SERIES LLC,

     Plaintiff,

v.

QBE HOLDINGS, INC., a foreign profit
Corporation, QBE INSURANCE CORP., a
foreign profit corporation, and QBE
REINSURANCE CORP., a foreign profit
corporation,

     Defendants.

_____/

**PLAINTIFF'S CLASS ACTION**
**COMPLAINT FOR DAMAGES**

## TABLE OF CONTENTS

NATURE OF THE ACTION...................................................**Error! Bookmark not defined.**

PLAINTIFF'S CLASS REPRESENTATIVE CLAIM.............**Error! Bookmark not defined.**

The E.M. claim demonstrates Plaintiff's right to recover for Defendants' failure to meet its

reimbursement obligations under the MSP Law………………………………………………

**Error! Bookmark not defined.**

JURISDICTION AND VENUE................................................**Error! Bookmark not defined.**

BACKGROUND.....................................................................**Error! Bookmark not defined.**

I.      Medicare Advantage Organizations…………………………………………..
        **Error! Bookmark not defined.**

II.     The Medicare Payment Process………………………………………………
        **Error! Bookmark not defined.**

III.    CMS' Standard for Storing Digital Health Insurance Claims Data………………..
        **Error! Bookmark not defined.**

IV.     Plaintiff's Use of EDI to Analyze Claims Data and Identify Reimbursement Claims
        Under the MSP
        Act…………………………………………………………………**Error!
        Bookmark not defined.**

THE PARTIES ........................................................................**Error! Bookmark not defined.**

CLASS DEFINITION .............................................................**Error! Bookmark not defined.**

CLASS ALLEGATIONS.........................................................**Error! Bookmark not defined.**

a.      Numerosity.................................................................**Error! Bookmark not defined.**

b.      Commonality..............................................................**Error! Bookmark not defined.**

c.      Typicality ...................................................................**Error! Bookmark not defined.**

d.      Adequacy ...................................................................**Error! Bookmark not defined.**

e.      Ascertainability...........................................................**Error! Bookmark not defined.**

CAUSES OF ACTION ............................................................**Error! Bookmark not defined.**

COUNT I.................................................................................**Error! Bookmark not defined.**

Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)…………………………………

**Error! Bookmark not defined.**

JURY TRIAL DEMAND........................................................**Error! Bookmark not defined.**

PRAYER FOR RELIEF..........................................................**Error! Bookmark not defined.**

Plaintiff, MSP RECOVERY CLAIMS, SERIES LLC, a Delaware limited liability company, SERIES 16-05-456, a designated series of MSP RECOVERY CLAIMS, SERIES LLC (collectively, "Plaintiff"), on behalf of itself and all others similarly situated, brings this action against QBE HOLDINGS, INC., a foreign profit corporation, QBE INSURANCE CORP., a foreign profit corporation, and QBE REINSURANCE CORP., a foreign profit corporation, (collectively, "Defendants"), and states as follows:

## NATURE OF THE ACTION

1.     This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act or the MSP Law, arising from Defendants' systematic and uniform failure to reimburse conditional Medicare payments.

2.     Defendants have failed to fulfill their statutory duties under the MSP Law as a "no-fault" insurer. Specifically, Defendants have repeatedly failed to provide primary payment, or reimburse secondary payments made by Plaintiff's assignors and Class Members, on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees") for medical expenses resulting from injuries sustained in automobile accidents (the "accident-related medical expenses"). The Enrollees were enrolled in Medicare Advantage health plans offered by Plaintiff's

assignors and Class Members, i.e., Medicare Advantage Organizations ("MAOs"), which suffered an injury-in-fact from Defendants' failure to reimburse, and accordingly, have standing to sue under 42 U.S.C. § 1395y(b)(3)(A).

3.    Plaintiff's assignors and the putative Class Members are MAOs that provided Medicare benefits to the Enrollees.  These Enrollees suffered injuries related to an accident and Plaintiff's assignors and the putative Class Members paid for medical items and/or services required by the Enrollees as a result of the accident. Because the Plaintiff's assignors' and Class Members' Enrollees were also covered by no-fault policies issued by the Defendants, Defendants are a primary payer under the MSP Law and must reimburse Plaintiff and the putative Class Members for their payment of accident-related medical expenses.

4.    Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or an MAO.  As described in detail below, Plaintiff's assignors and the Class Members have each suffered an injury in fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations.

5.    On behalf of itself and the Class, Plaintiff seeks, *inter alia*, double damages under the MSP Law for Defendants' failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period. This lawsuit, like others, advances the interests of the MSP Act and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

**PLAINTIFF'S CLASS REPRESENTATIVE CLAIM**
**RELATING TO MEDICARE PART C BENEFICIARIES**

6.      Plaintiff is the class representative of a class that consists of MAOs and their assignees. Accordingly, Plaintiff sets forth below an example of Defendants' systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In this example, Plaintiff describes Defendants' failure to reimburse conditional payments and how that failure caused an injury in fact to an MAO, which subsequently assigned its recovery rights to Plaintiff.

**The E.M. claim demonstrates Plaintiff's right to recover for Defendants' failure to meet its reimbursement obligations under the MSP Law.**

1.      On November 18, 2011, E.M. was enrolled in a Medicare Advantage plan issued and administered by Health First Health Plans, Inc. ("HFHP").   HFHP is an MAO.

2.      On November 18, 2011, E.M. was injured in an accident. At the time of the accident, E.M. was also insured under a no-fault policy issued by Defendants.  As a direct result of the accident, E.M. sustained injuries which include but are not limited to the following:

    i.   873.20 - Open wound of nose, unspecified site, without mention of complication

    ii.  802.0 - Closed fracture of nasal bones

    iii. 802.1- Open fracture of nasal bones

    iv.  729.5 - Pain in limb

    v.   729.81 - Swelling of limb

A list of the diagnosis codes and injuries assigned to E.M. in connection with E.M.'s accident-related treatment is attached hereto as **Exhibit A**.

3.      As a direct and proximate result of the accident and the injuries detailed above,

E.M. required medical items and services.  Those medical items and services include but are not limited to:

    i.  99284 - Under New or Established Patient Emergency Department Services

    ii.  12011 - Under Repair-Simple Procedures on the Integumentary System

    iii.  99053 - Under Miscellaneous Medicine Services

    iv.  90471 - Under Immunization Administration for Vaccines/Toxoids

    v.  99283 - Under New or Established Patient Emergency Department Services

    vi.  70160 - Under Diagnostic Radiology (Diagnostic Imaging) Procedures of the Head and Neck

    vii.  73130 - Under Diagnostic Radiology (Diagnostic Imaging) Procedures of the Upper Extremities

    viii.  73610 -  Under Diagnostic Radiology (Diagnostic Imaging) Procedures of the Lower Extremities

    ix.  99213 - Under Established Patient Office or Other Outpatient Services

    x.  G0168 - Wound closure utilizing tissue adhesive(s) only

An account of the items and services provided to E.M. as a result of the accident are included within **Exhibit A**.  The medical services were rendered by FLAGLER HOSPITAL, MICHAEL BORN, JANICE VUCINICH, and STEPHEN BADOLATO between November 18, 2011 and November 25, 2011.

    4.    The medical providers subsequently issued a bill for payment of the accident-related medical expenses to E.M.'s MAO, HFHP which was fully responsible for all medical expenses incurred by E.M.  HFHP paid $652.66 for E.M.'s accident-related medical expenses.

While Plaintiff alleges the amount paid solely for purposes of completeness, medical providers actually billed and charged HFHP $5,610.43 for E.M.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff seeks double the amount of $5,610.43 as damages for this particular claim.

5.    Defendants are liable to pay this amount because it was E.M.'s primary payer by virtue of a no-fault insurance policy that covered E.M. In fact, Defendants reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that it was the primary payer for E.M.[1] Further, Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse HFHP. A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit C**.[2] Despite Defendants' reporting that it was a primary payer, and the corresponding admission that it should have paid for E.M.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

6.    Although Defendants reported that it was the primary payer for E.M.'s claim, Plaintiff reserves the right to pursue reimbursement for E.M.'s medical expenses against any of

---

[1] Plaintiff has identified at least 155 instances where Defendants admitted it was to provide primary payment on behalf of Enrollees. A list of such instances is attached hereto as **Exhibit B**.

[2] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendants, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendants chose to report.



Defendants' subsidiaries shou[...] [p]ayer.  As demonstrated in the

corporate structure below, De[...]

     a.  QBE REINSU[...]

     b.  QBE INSURA[...]

     7.     Plaintiff has the legal right to pursue this MSP Act claim pursuant to a series of

valid assignment agreements.

     8.     On April 28, 2016, Health First Health Plans, Inc. ("HFHP"), a Medicare

Advantage Organization, through its administrator Health First Administrative Plans, Inc.

("HFAP"), irrevocably assigned all rights to recover conditional payments made on behalf of its

Enrollees to MSP Recovery, LLC ("Recovery Agreement"). HFHP's assignment is evidenced by:

     a.  The Recovery Agreement dated April 28, 2016, executed by Michael Keeler, as

Chief Operating Officer of both HFHP and HFAP. A true and correct copy of the HFAP Recovery Agreement is attached hereto as **Exhibit D.**

b.  The Affidavit of Michael Keeler, dated April 12, 2018 and attached hereto as **Exhibit E,** which provides that, at all relevant times, HFHP intended to and did assign the Assigned Claims to MSP Recovery, LLC on April 28, 2016.

c.  The Affidavit of Michael Keeler, dated June 1, 2018, and attached hereto as **Exhibit F**, and which affirms (1) that HFAP and HFHP intended the Recovery Agreement "to irrevocably assign the Medicare Secondary Payer recovery rights of HFHP to MSP Recovery, LLC and authorize the transfer of HFHP's claims data to MSP Recovery for analysis and use in furtherance of that end;" and (2) that HFAP performs all administrative functions for, and on behalf of, HFHP and has the authority to enter into agreements transferring the recovery rights of HFHP, including the recovery rights at issue in this lawsuit.

d.  The Addendum to the Recovery Agreement and Assignment Addendum on behalf of HFAP and HFHP dated June 1, 2018 and executed by Michael Keeler (the "Addendum").  A copy of the Addendum is likewise included in **Exhibit F-1**.

e.  The Assignment executed by Michael Keeler on June 1, 2018 (the "HFHP Assignment"), a copy of which is included in **Exhibit F-2**.

9.     The Recovery Agreement expressly provides:

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

[**Ex. D**, § 4.1, *Recovery Agreement*].

10.     All administrative functions and operations of HFHP, including the issuance of conditional payments, are performed by HFAP. Because HFHP generally acts through HFAP for all administrative functions – including entering into contracts – the Recovery Agreement was executed by HFAP, on behalf of "all affiliated health plans…and Medicare Advantage Organizations having direct contracts with CMS," which includes HFHP. **Ex. D**, Recovery Agreement, § 2.2.

11.     The HFHP Assignment confirms, ratifies and memorializes HFHP's irrevocable assignment of the Assigned Claims, as defined in the HFAP Recovery Agreement, as of April 28, 2016.  See **Ex. F-2**.

12.     HFHP transferred and delivered claims data for dates of service between February 2007 and December 2016 to MSP Recovery, LLC.  Pursuant to the Recovery Agreement, the claims data transferred and delivered to MSP Recovery, LLC by HFHP constitute the Assigned Claims.

13.     On June 12, 2017, MSP Recovery, LLC assigned all rights acquired under the Recovery Agreement to Plaintiff's designated series, Series 16-05-456 (the "Series Assignment"). The Series Assignment is attached hereto as **Exhibit G** and states:

> …each undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement ...

14.     Although not required by the MSP Act, the governing regulations, or interpretive case law, Plaintiff, on June 20, 2018, and then again on June 28, 2018, issued a Coordination of

Benefits Letter to Defendants, which provided Defendants access to the foregoing information regarding the E.M. claim and sought additional information related to reimbursements owed by Defendants to Plaintiff's assignors (the "QBE Holdings, Inc. Letter"). A true and correct copy of Plaintiff's QBE Holdings, Inc. Letter to Defendants is attached hereto as **Exhibit H**.

15.    As shown by the QBE Holdings, Inc. Letter and Defendants' own claims reporting, Defendants had actual and constructive knowledge that it was the primary payer for E.M.'s accident-related expenses.

16.    Accordingly, Plaintiff is entitled to collect double damages against Defendants for its failure to reimburse HFHP's conditional payment for E.M.'s accident-related expenses.

17.    Detailed allegations regarding the foregoing representative claim, i.e., specific payments, coverage determinations, etc., are not required in order to plead an MSP Act claim but, in any event, said information is in Defendants' possession and will be located and assessed through the process of discovery.  However, the allegations set forth herein plainly demonstrate that Plaintiff's assignors suffered damages as a direct result of Defendants' individual failure to reimburse conditional payments as required under the MSP law.

18.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

19.    Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

20.    Once an MAO makes a payment for medical items and services on behalf of its

Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

21.     The items and services received by and paid on behalf of the Enrollees, including E.M. were reasonable and necessary.

22.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

23.     Pursuant to Plaintiff's limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff. Therefore, Plaintiff may pursue HFHP's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendants.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

25.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Middle District of Florida because it is the district in which Defendants reside.

26.     This Court has personal jurisdiction over Defendants as Defendants are authorized and licensed to conduct business in Florida, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avails itself of the benefits in this judicial district.

27.     All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the applicable.

## BACKGROUND

28.    The MSP Law declares that Medicare or MAOs are "secondary payers" to all other sources of coverage, and, consequently, MAOs that are injured as a result are empowered to recoup from the rightful primary payer if Medicare or an MAO pays for a service that fell within overlapping insurance coverage for a Medicare Part C beneficiary.

29.    Defendants are a primary plan under § 1395y(b)(2)(A) because it is a no-fault insurer. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

### I.    Medicare Advantage Organizations

30.    The Medicare Advantage program, otherwise known as Part C, was enacted in 1997.  Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS. *See* **Exhibit I**, MAO Directory provided by CMS.

31.    CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum, the same benefits an Enrollee would receive under traditional Medicare.  MAOs are a private sector analog to traditional Medicare and have the same rights to reimbursement from primary payers, like the Defendants here.

### II.    The Medicare Payment Process

32.    An MAO must process and pay or deny claims promptly to comply with the specific requirements established by federal law, federal regulations, and the terms of the its contract with

CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. § 422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A).

**III.    CMS' Standard for Storing Digital Health Insurance Claims Data**

33.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.  According the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[3]

a.    The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

b.    The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

34.    Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

a.    Dates (including dates of service): the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

---

[3] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

     i.   According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[4]

    ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[5], 2011[6], 2012[7], 2013[8], 2014[9], and 2016.[10]

---

[4] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[5] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[6] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[7] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[9] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[10] Medicare Plan Payment Group Enterprise Systems Solutions Group

iii. CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[11]

iv. The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v. In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b. Medical Diagnosis and Procedure Codes:

i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the

---

Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[11] CMS.gov. Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[1213]

ii.  International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

iii.  Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv.  Current Procedural Terminology ("CPT") - CPT[14] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient

---

[12] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[13] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

[14] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[15]

v.   Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[16]

vi.   Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[17]

vii.   The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

---

[15] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

[16] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[17] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

## IV. Plaintiff's Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.

35.    Using a software system (the "MSP System"), designed and developed by Plaintiff, Plaintiff can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendants. The System can also identify the amounts owed, by using the Defendants' EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

36.    Plaintiff merges Defendants' data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

37.    The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances

that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a no-fault provider.

## THE PARTIES

38.    Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSP Recovery Claims, Series LLC.

39.    MSP Recovery Claims, Series LLC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of MSP Recovery Claims, Series LLC and pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by the MSP Recovery Claims, Series LLC. MSP Recovery Claims, Series LLC may receive assignments in the name of MSP Recovery Claims, Series LLC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series.  Any claim or suit may be brought by the MSP Recovery Claims, Series LLC in its own name or it may elect to bring suit in the name of its designated series.

40.    MSP Recovery Claims, Series LLC's limited liability agreement provides that any

rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims,

Series LLC.

41.    Series 16-05-456, is a series of MSP Recovery Claims, Series LLC with its

principal place of business at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

42.    The Defendants are insurance companies that are authorized to and presently

conduct business in the State of Florida.

43.    Complete diversity exists between the parties.

## CLASS DEFINITION

44.    The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under
Medicare Part C, in the United States of America and its territories, and that made payments
for a Medicare beneficiary's medical items and services within the last six years from the
filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items
and services that are required to be covered by the policy of insurance of the same Medicare
Beneficiaries that are also covered by a Medicare Advantage plan; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare
Advantage Organizations, or their assignees, for the items and services that were provided
for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, its officers, directors, management,
employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action
and any members of their immediate families.

## CLASS ALLEGATIONS

45.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure

23, on behalf of all Class Members, or their assignees, that paid for their beneficiaries' medical

expenses, when Defendants should have made those payments as primary payers and should have

reimbursed the Class Members.

46.     As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law.  This failure to reimburse applies to Plaintiff, as the rightful assignee of MAOs that assigned their recovery rights to Plaintiff, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

47.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

48.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

      a.  **Numerosity**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs (including its assignees), throughout the United States, that were not reimbursed by Defendants under a policy which provided Personal Injury Protection ("PIP") or Med Pay coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

b. **Commonality**:  Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendants failed to make reimbursement payments, report its Ongoing Responsibility for Medical Treatment ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with its statutory duty to pay or reimburse Plaintiff's assignors pursuant to the MSP provisions. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because

Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by their contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, have a right to relief for Defendants' failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendants' legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members.  In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts. In fact, two courts have already concluded that Plaintiff's counsel is "willing and able to take an active role as class representative and advocate on behalf of all class members." *E.g., MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

e. **Ascertainability**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities could be accomplished by direct communication.

49.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendants, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

50.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiff and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.  Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA*

*Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

51.     Proceeding with a class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

52.     Administering the proposed Class will be relatively simple. Defendants provided no-fault policies with claimants who are also Medicare beneficiaries.  Once that data identifying these policies is compiled and organized, Plaintiff can determine which of the policy holders were Medicare beneficiaries during the applicable time.  Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payer and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

53.    Plaintiff's claims result from Defendants' failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available.  Defendants issue no-fault insurance policies and are thus a primary payer liable under the MSP Law.

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

54.    Plaintiff incorporates by reference paragraphs 1-55 of this Complaint.

55.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

56.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendants' status as a primary plan; (2) the defendants' failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

57.    Defendants' no-fault policy is a primary plan, which rendered the Defendants a primary payer for accident-related medical expenses.

58.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignors paid for items and services which were also covered by no-fault insurance policies issued by Defendants.

59.    More specifically, Plaintiff's and the Class Members' Medicare beneficiaries were also covered by no-fault, PIP, or medical payments policies issued by the Defendants.

60.    Because the Defendants are a primary payer, the Medicare payments for which

Plaintiff seeks reimbursement were conditional payments under the MSP Law.

61.    Defendants were required to timely reimburse Plaintiff's assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

62.    Plaintiff and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

63.    Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of Plaintiff's assignors and the Class Members.

64.    In this case, Defendants failed to administratively appeal Plaintiff's assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

65.    Plaintiff, for itself and on behalf of the Class, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## COUNT II
## Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

66.    Plaintiff incorporates by reference paragraphs 1-55 of this Complaint.

67.    Plaintiff's assignors are subrogated the right to recover primary payment from Defendants for the Defendants' breach of contract with their insured, pursuant to the MSP Law.

Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by the Plaintiff and other Class Members. Under the MSP provisions, Plaintiff is permitted to subrogate the enrollee/insured's right of action against the Defendants. *See* 42 C.F.R. § 411.26.

68.     Plaintiff complied with any conditions precedent to the institution of this action, to the extent applicable.

69.     Defendants failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

70.     Defendants failed to pay each enrollee's covered losses, and Defendants had no reasonable proof to establish that it was not responsible for the payment.

71.     Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiff and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## **JURY TRIAL DEMAND**

72.     Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## **PRAYER FOR RELIEF**

73.     WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, pray for the following relief:

      a.   find that this action satisfies the prerequisites for maintenance of a class action

pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the Class;

b.  designate Plaintiff as representative for the Class and Plaintiff's undersigned counsel as Class Counsel for the Class; and

c.  issue a judgment against Defendants that:

      i.    grant Plaintiff and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

      ii.   grant Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

      iii.  grant Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

      iv.  grant Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 31, 2018                    Respectfully submitted,

**MSP Recovery Law Firm**
*Counsel for Plaintiffs*
5000 S.W. 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2239

Frank C. Quesada, Esq., Fla. Bar No. 29411
Service E-mail: serve@msprecovery.com
E-mail: fquesada@msprecovery.com