**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MSP RECOVERY CLAIMS, SERIES
LLC and SERIES 16-05-456,

        Plaintiffs,

v.                                Case No.: 6:18-cv-1458-Orl-31GJK

QBE HOLDINGS, INC., QBE
INSURANCE CORP. and QBE
REINSURANCE CORP.,

        Defendants.

_____/

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY AND INCORPORATED MEMORANDUM OF LAW

Defendants QBE Holdings, Inc., QBE Insurance Corp., and QBE Reinsurance Corp. ("Defendants") hereby move, pursuant to Federal Rule of Civil Procedure 26(c), for entry of a protective order temporarily staying discovery with respect to the initial discovery requests served upon them by Plaintiffs MSP Recovery Claims, Series LLC and Series 16-05-456 ("Plaintiff"),[1] and staying all other discovery in this matter pending resolution of Defendants' Motion to Dismiss Complaint and Incorporated Memorandum of Law (ECF No. 33). As the Motion to Dismiss demonstrates, Plaintiff does not, and cannot, have standing to bring this action; thus, the case must be dismissed in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Standing is a threshold, case-dispositive issue, and facial challenges to a plaintiff's standing should be resolved before discovery

---

[1] For purposes of this Motion, Defendants adopt Plaintiffs' practice of referring to MSP Recovery Claims Series, LLC and Series 16-05-456 in the singular. *See* ECF No. 33 p. 1 n.1.

begins in order to preserve the resources of the parties and the Court. This is especially true where, as here, the motion is likely to be granted, disposing of the entire case and obviating the need for any discovery. Plaintiff will not be prejudiced by a temporary discovery stay, but the burden on Defendants will be substantial if discovery is allowed to proceed. Accordingly, good cause and reasonableness warrant a temporary stay of discovery in this matter pending resolution of the Motion to Dismiss.

## **BACKGROUND**[2]

On September 6, 2018, Plaintiff filed a putative class action alleging that Defendants failed to make certain primary payments or reimburse secondary payments as required by the Medicare Secondary Payer Act ("MSPA"). ECF No. 1, ¶ 2. According to Plaintiff, the putative class it seeks to represent consists of hundreds of Medicare Advantage Organizations ("MAOs") and their assignors. *Id.* at ¶ 48. Plaintiff asserts a private cause of action under Section 1395y(b)(3)(A) of the MSPA and a direct right of recovery for breach of contract under 42 C.F.R. § 411.24(e). *Id.* at ¶¶ 55, 67. Lacking its own rights under the MSPA, Plaintiff attempts to bring this action as the assignee of the rights of MAO Health First Health Plans ("HFHP"), which it allegedly acquired via a series of purported assignments from HFHP to MSP Recovery, LLC to Series 16-05-456. *Id.* at ¶¶ 7-13. The validity of this series of assignments, and therefore Plaintiff's standing to bring this case, is the crux of the present dispute.

On December 6, 2018, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), demonstrating the absence of subject-matter jurisdiction

---

[2] For a detailed statement of the facts, see ECF No. 33, pp. 1-8.

due to Plaintiff's lack of standing. On January 9, 2019, Plaintiff submitted a Memorandum in Opposition to the Motion to Dismiss, ECF No. 40 (the "Opposition"). Defendants thereafter filed a Motion for Leave to Reply in Further Support of their Motion to Dismiss on the bases, among others, that the Opposition repeatedly mischaracterizes Defendants' arguments and makes inaccurate, misleading allegations of fact and law not made in the Complaint. ECF No. 42, p. 2. On February 4, 2019, the Court granted Defendants leave to file a reply. ECF No. 43.

Meanwhile, on January 23, 2019, Plaintiff served interrogatories, requests for production of documents, and notices of 30(b)(6) depositions on each of the Defendants – the first discovery served in this case.[3] As explained in detail in Section II.D below, the scope of these discovery requests and the burden they seek to impose on Defendants are substantial.

## MEMORANDUM OF LAW

**I.  The Court has broad discretion to stay discovery pending resolution of a dispositive motion.**

Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." Fed. R. Civ. P. 26(c) (2019). Under Rule 26(c), a court may, for good cause, issue an order to protect a person from undue burden or expense. *Id.* Protective orders staying discovery may be issued under Rule 26(c) upon a showing of good cause and reasonableness. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006).

---

[3] The discovery requests served upon Defendant QBE Holdings, Inc., which are representative of those served on the other two Defendants, are attached hereto as Exhibits A (interrogatories), B (document requests), and C (deposition notice).

The Eleventh Circuit has encouraged district courts to exercise their broad inherent power to manage discovery, instructing, as this Court once aptly summarized, that courts "should resolve certain pretrial motions—such as a motion to dismiss—before discovery begins where the dispute presents a legal question and there are no issues of fact to be addressed.[]" *Rando v. Gov't Emps. Ins. Co.*, No. 5:06-cv-336-Oc-10GRJ, 2006 WL 8439443, at *2 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense . . . should . . . be resolved before discovery begins."). Allowing a claim that has been facially challenged to proceed through the pretrial process, *Chudasama* explains, "does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system." 123 F.3d at 1368.

Following *Chudasama*, courts in this circuit have stayed discovery in cases pending resolution of motions to dismiss for lack of subject matter jurisdiction that, like the Motion to Dismiss here, raise facial challenges to a plaintiff's standing. *See, e.g.*, *Belloso v. Asplundh Tree Expert, Co.*, No. 6:18-cv-460-Orl-40TBS, 2018 WL 4407088, at *3 (M.D. Fla. Sept. 17, 2018) (staying discovery pending resolution of meritorious and potentially case-dispositive motion to dismiss for lack of standing); *Zamber v. Am. Airlines, Inc.*, No. 16-CV-23901-MARTINEZ/GOODMAN, 2017 WL 5202748, at *2, 5, 6 (S.D. Fla. Feb. 17, 2017) (although court could not conclude the case was "surely destined for dismissal," the motion to dismiss for, *inter alia*, lack of standing presented "case-dispositive arguments which create[d] a significant possibility that at least one of the two primary defense theories [would] succeed"

4

and thus, court stayed discovery pending resolution of motion); *Torongo v. Robert G. Roy, D.V.M., M.S., P.A.*, No. 15-cv-81490, 2016 WL 10706286, at *1 (S.D. Fla. Jan. 28, 2016) (staying discovery pending resolution of motion to dismiss for same reasons).

Indeed, this Court has underscored its "broad inherent power" to grant a protective order and has frequently found good cause and reasonableness warranting a stay of discovery where a motion to dismiss the case is pending. *E.g.*, *Rich v. City of Jacksonville*, No. 3:09–cv–454–J–34MCR, 2010 WL 1141556, at *1 (M.D. Fla. Mar. 23, 2010) (staying discovery pending resolution of motion to dismiss, explaining that "Courts in this circuit have granted such motions to stay where the resolution on the pending motion to dismiss may extinguish some or all of the claims . . . potentially restricting the scope of discovery significantly") (internal quotation marks omitted); *see also Rando*, 2006 WL 8439443, at *2 (M.D. Fla. Dec. 4, 2006) (staying discovery pending resolution of motion to dismiss, noting courts' "broad inherent power to stay discovery" to avoid "needlessly unnecessary discovery costs") (internal quotation marks omitted).

When considering whether a dispositive motion based on lack of standing or some other facial deficiency warrants a stay of discovery pending its resolution, a court "must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *McCabe*, 233 F.R.D. at 685 (internal quotation marks omitted). In undertaking this assessment, courts typically weigh the likely costs and burdens of proceeding with discovery and "take a preliminary peek at the merits of the dispositive motion to see if it appears to be clearly meritorious and truly case dispositive." *Id.* When it does, and the burden of proceeding with discovery outweighs the

harm, if any, in delaying it, a stay of discovery is appropriate. *See, e.g.*, *Redford v. Gwinnett Cnty. Judicial Cir.*, 350 F. App'x 341, 346 (11th Cir. 2009) (affirming discovery stay pending resolution of motion to dismiss where plaintiffs' claim was of questionable viability), *cert. dismissed*, 559 U.S. 968 (2010); *Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, No. 2:17-cv-24-FtM-38CM, 2017 WL 5256861, at *2 (M.D. Fla. Nov. 13, 2017) (staying discovery pending resolution of motion to dismiss, rejecting plaintiff's argument that stay "would cause undue prejudice and unwarranted delay" and instead finding that the delay would "cause Plaintiff little harm and promote judicial efficiency"); *Theodore D'Apuzzo, P.A. v. U.S.,* No. 16-62769-Civ-Scola, 2017 WL 3098713, at *2 (S.D. Fla. Apr. 11, 2017) (staying discovery in putative class action because of prejudice defendant would suffer if discovery were to proceed); *Sykora v. Brennan*, No. 3:15–cv–192–J–20MCR, 2015 WL 12857090, at *1 (M.D. Fla. Dec. 22, 2015) (staying discovery pending decision on motion to dismiss); *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-cv-80134, 2014 WL 12580035, at *1 (S.D. Fla. June 24, 2014) (same; court concerned about legitimacy of plaintiff's claim, and plaintiff could not demonstrate prejudice from stay).

## II. <u>Good cause and reasonableness support a temporary stay of discovery during the pendency of Defendants' Motion to Dismiss.</u>

The Motion to Dismiss raises a facial challenge to Plaintiff's standing. *See* ECF No. 33. In keeping with the Eleventh Circuit holding in *Chudasama*, and the many decisions of this and other district courts in this circuit that have followed its guidance, the threshold jurisdictional dispute should be resolved prior to the start of discovery in this case.

**A.  The Motion to Dismiss is meritorious and likely to be granted.**

As the Motion to Dismiss explains, Plaintiff has no standing to bring this MSPA case absent a valid assignment from a party with MSPA rights, and Plaintiff has not received such an assignment. *See, e.g.*, ECF No. 33, p. 8. This is not the first time this very Plaintiff's standing to sue as the purported assignee of HFHP's MSPA rights (or the non-existent rights of its self-styled "administrator")[4] has been challenged. And *none* of the cases Plaintiff filed as purported assignee of HFHP's (or its "administrator's") rights survived dismissal. *See* ECF No. 33, pp. 10-16, 20-21 (citing *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626-CIV-ALTONAGA/Goodman, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018) (finding Plaintiff did not have standing because it had not received an assignment of MSPA rights)); *MSP Recovery Claims, Series LLC v. Travelers Cas. & Sur. Co.*, No. 17-23628-CIV-WILLIAMS, 2018 WL 3599360, at *4 (S.D. Fla. June 21, 2018) (same); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-cv-01541-JBM-JEH, 2018 WL 2392827, at *6, 8 (C.D. Ill. May 25, 2018) (same); *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, Nos. 1:17-cv-23841-PAS, 1:17-cv-24069-PAS, 1:17-cv-24066-PAS, 1:17-cv-24068-PAS, 2018 WL 1953861, at *5, 6 (S.D. Fla. Apr. 25, 2018) (same), *appeal dismissed sub nom.*, *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*,

---

[4] In the past, Plaintiff had attempted, incorrectly, to assert that non-MAO HFAP was an MAO, whose MSPA rights Plaintiff purportedly received by assignment pursuant to the same "Recovery Agreement" attached as Exhibit D to the Complaint in this case. *See, e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-cv-01541-JBM-JEH, 2018 WL 2392827, at *3 (C.D. Ill. May 25, 2018). Since being sanctioned for misrepresenting HFAP as an MAO, *see MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17–cv–01541–JBM–JEH, 2018 WL 2735106, at *8 (C.D. Ill. June 7, 2018),  Plaintiff has since abandoned the argument that HFAP is an MAO, but continues to maintain that the "Recovery Agreement," now allegedly executed by HFAP "on behalf of" HFHP, successfully transferred HFHP's rights. *See, e.g.*, *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626-CIV-ALTONAGA/Goodman, 2018 WL 5112998, at *4 (S.D. Fla. Oct. 19, 2018); ECF No. 1, pp. 8-9.

Nos. 18-12139-GG, 18-12149-FF, 18-13049-FF, 18-13312-EE, 2018 WL 6132508 (11th Cir. Nov. 8, 2018)).

Importantly, "this Court has found a party's litigation history to be relevant when determining whether to stay discovery pending the resolution of a motion to dismiss based on facial challenges." *Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09–cv–298–J–34TEM, 2009 WL 4899400, at *2 (M.D. Fla. Dec. 11, 2009) (staying discovery pending resolution of motion to dismiss where plaintiff was a "prolific litigator," and in prior suits, "he ha[d] not survived the motion to dismiss stage of the proceedings"). Although in each new lawsuit filed, has Plaintiff modified its argument as to why it is entitled to assert the rights of some "Health First" entity, Plaintiff continues to rely on documents and arguments that have been rejected along the way. *See* ECF No. 33, pp. 10-16, 21-22. Every one of the exhibits Plaintiff relies on here in an attempt to establish standing was before the court in the most recent of Plaintiff's lawsuits, *MSP Recovery Claims, Series LLC v. USAA General Indemnity Co.*, which was dismissed based on lack of standing.[5] No. 18-21626-CIV-ALTONAGA/Goodman, 2018 WL 5112998, at *3.

Although Plaintiff contends in its Opposition that *USAA* "has no relevance here," ECF No. 40 p. 16, that simply is not true. To show why a discovery stay is warranted, Defendants briefly address why *USAA* strongly indicates that this case is destined for dismissal, thus justifying a stay of discovery. The *USAA* court discussed the insufficiency of each document Plaintiff uses to try to establish an assignment of MSPA rights in this case,

---

[5] The exhibits on which Plaintiff relies are ECF Nos. 1-5, 1-6, 1-7.

*including* the Nunc Pro Tunc ("NPT") Assignment and Addendum to the Recovery Agreement. *See USAA*, 2018 WL 5112998, at *8-*11.

Although the NPT Assignment and Addendum were untimely in *USAA* insofar as they were executed after the complaint was filed, the court's discussion of those and the other assignment documents on which Plaintiff relies here is nonetheless relevant and instructive. The *USAA* court acknowledged that the "Addendum, Nunc Pro Tunc Assignment, and other post-lawsuit documents attached to the [complaint] attempt to show the original assignment agreements were meant to name HFHP as the true assignor, not the non-MAO HFAP," but the court opined it would be inappropriate to "give any weight to this eleventh-hour extra-contractual evidence of the parties' intent . . . given the Recovery Agreement is unambiguous on its face." *Id*. at *10-11. The Recovery Agreement in that case was the same as the one in this case; therefore, Plaintiff's attempt to alter its plain language with the NPT Assignment and Addendum is equally unavailing.

Regardless, the Court need not resolve this debate now. For purposes of this Motion, it is enough that *USAA*, the cases preceding it, and the numerous analogous cases where Plaintiff purported to assert a different MAO's rights (cited in the Motion to Dismiss) provide a sufficient basis to conclude that the Motion to Dismiss is clearly meritorious and likely to be granted. To avoid a potentially unnecessary burden on the litigants and the Court, discovery should therefore be stayed while the Court considers the Motion to Dismiss.

**B.  The Motion to Dismiss is truly case dispositive.**

Defendants' Motion to Dismiss likely will be granted *with prejudice*. Even though dismissals for lack of subject matter jurisdiction are generally without prejudice, many of the

above-described lawsuits Plaintiff has filed were dismissed with prejudice because the courts could not "'perceive how Plaintiffs could amend their allegations in good faith to overcome the lack of subject matter jurisdiction.'" *Travelers*, 2018 WL 3599360, at *4, *4 n.5 (holding that HFAP was not "within the purview of parties who can bring a claim under § 1395y(b)(3)(A)" – a "fatal defect" warranting dismissal with prejudice) (quoting *State Farm*, 2018 WL 2392827, at *8 n.7 (same; rejecting argument that HFAP assigned rights on behalf of HFHP and finding that any amendment to the complaint "would be futile")) (internal quotation marks omitted); *Auto-Owners*, 2018 WL 1953861, at *6 (same). This case is no different.

Although Plaintiff has created documents in an attempt to circumvent the rulings in the earlier cases, it still lacks standing, as the Motion to Dismiss explains. *See* ECF No. 33, pp. 12-22. Try as it might, Plaintiff cannot "rewrite history" with the "convoluted story" it has created in a failed attempt to show that "there was an MAO all along that properly assigned [its] rights." *USAA*, 2018 WL 5112998, at *13. As with the previous cases, "Plaintiff's own evidence confirms that it *cannot* allege facts to show standing," and so "the Court lacks subject-matter jurisdiction to hear this case." *Auto-Owners*, 2018 WL 1953861, at *6 (emphasis added).

Moreover, Plaintiff could not now create a new, retroactive assignment agreement and attach it to an amended complaint to cure its lack of standing, since standing must exist at the time a lawsuit is filed, and "[n]unc pro tunc assignments are not sufficient to confer

retroactive standing."[6] *USAA*, 2018 WL 5112998, at *12 (internal quotation marks omitted). Of course, "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, [or] a new cause of action." *Id.* (internal quotation marks omitted). Plaintiff claims entitlement to bring this suit based on specific allegations that attempt to establish standing via a purported series of assignments of rights to Plaintiff. As the Motion to Dismiss establishes, those assignments were insufficient to confer standing on Plaintiff, and no amendment to the Complaint could overcome that fact. *See* ECF No. 33, pp. 12-22. The case will therefore likely be dismissed with prejudice.

However, the Court need not find at this juncture that the Motion to Dismiss necessarily *will* be case-dispositive in order to find good cause to stay discovery. *See McCabe*, 233 F.R.D. at 687 (staying discovery based on "preliminary peek" at the pleadings, but noting that "[w]hether the amended pleading can withstand the challenges is a matter for consideration by the District Court"). Rather, a discovery stay is warranted here if this Court finds that the Motion to Dismiss "may" dispose of one or both of Plaintiff's claims. *See, e.g.*, *Rich*, 2010 WL 1141556, at *1. Plaintiff's unsuccessful litigation history described above and the likelihood of dismissal with prejudice here provide ample support for a finding that the Motion to Dismiss "may" be case- or issue-dispositive.

---

[6] In its Opposition, Plaintiff contends that the contrary is true. ECF No. 40 p. 14. However, Plaintiff bases this argument on four non-binding district courts opinions from other circuits and two factually distinguishable Eleventh Circuit decisions that were limited to the context of copyright infringement claims and do not stand for the general proposition that a nunc pro tunc assignment can confer retroactive standing. *See id.*

**C.  Plaintiff will not be prejudiced by a temporary stay of discovery.**

The likelihood that the Motion to Dismiss will be granted, disposing of the case entirely, outweighs any hypothetical harm that might result from discovery delays generally. *See Ava Maria Univ. v. Sebelius*, No. 2:12-cv-88-Ftm-99SPC, 2012 WL 13059434, at *2 (M.D. Fla. Nov. 28, 2012) (rejecting plaintiff's argument that a discovery stay would cause prejudice, since "staying discovery will only delay the resolution of the case if the Motion to Dismiss is denied, and there is a significant possibility that it will be granted"). No harm to Plaintiff will result since the case will in all likelihood be dismissed, as discussed above.

Even if the Complaint were to survive the Motion to Dismiss, Plaintiff would still not be prejudiced by a temporary discovery stay pending resolution of the Motion to Dismiss. The case is in its early stages. Plaintiff's initial discovery requests have only recently been served, and approximately six months remain before the fact discovery deadline,[7] giving Plaintiff an opportunity to conduct discovery after the threshold issue of standing is resolved. *D'Apuzzo*, 2017 WL 3098713, at *2 (finding no prejudice to plaintiff from staying discovery in putative class action pending resolution of motion to dismiss; plaintiff would "have sufficient opportunity to conduct discovery if his claims advance"); *Dunedin Dev. Co., LLC v. City of Dunedin, FL*, No. 8:09-CV-00303-T-33AEP, 2009 WL 10708338, at *1 (M.D. Fla. Oct. 7, 2009) (finding no prejudice to plaintiff from stay where discovery deadline was approximately six months away). Moreover, discovery for jurisdictional purposes is not necessary because Defendants' lack of standing argument is based on the Complaint as pled, and all of the documents Plaintiff claims give it standing are attached to the Complaint.

---

[7] *See* ECF No. 36 p. 1.

**D.** **The costs and burdens of proceeding with discovery in this putative class action would be substantial.**

Although Plaintiff will sustain no harm if discovery is temporarily stayed in this matter, Defendants would sustain substantial, unnecessary harm if discovery were to proceed before the Court rules on their Motion to Dismiss. In the Eleventh Circuit, "[a] discovery stay is . . . reasonable to avoid unnecessary expenses for the defendant," *particularly* in the class-action context where discovery requests are expansive and relate to a large putative class. *Zamber*, 2017 WL 5202748, at \*3; *see also Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-22691, 2014 WL 12528362, at \*1 (S.D. Fla. Dec. 10, 2014) (staying discovery where putative class consisted of "thousands of persons" and discovery would involve the review of "between 40,000 and 43,000 Florida PIP claims," placing a "heavy burden" on the defendant). Similarly, where a defendant challenges the standing of a plaintiff purporting to be a class representative, a stay of discovery pending resolution of that challenge is appropriate, since, if the class representative "were determined to have no standing, he obviously would have no right to continue to pursue discovery on behalf of a putative class . . . ." *Baptist Hosp. of Miami, Inc. v. Demario*, 683 So. 2d 641, 643 (Fla. Dist. Ct. App. 1996).

In a previous putative class action asserting MSPA claims, this Court stayed discovery pending resolution of the defendant's dispositive motion to dismiss, finding that discovery was "likely to be highly burdensome" in light of discovery requests served on the defendant medical provider seeking, "*inter alia*, financial records for every Medicare recipient treated at [the defendant medical facility] in the past seven years." *MSPA Claims 1, LLC v. Halifax Health, Inc.*, No. 6:17–cv–1790–Orl–31DCI, 2017 WL 6512554, at \*2 (M.D.

Fla. Dec. 20, 2017). Plaintiff's first discovery requests recently served on Defendants are similarly "likely," if not guaranteed, "to be highly burdensome." *See id.*

By way of example, the first two of Plaintiff's sixteen interrogatories ask each of the Defendants to "IDENTIFY ALL UNDERLYING CLAIMANTS" and "IDENTIFY ALL POTENTIAL UNDERLYING CLAIMANTS." Exhibit A, p. 7. The relevant terms in these two interrogatories are defined as follows:

- "The term 'IDENTIFY' or 'IDENTIFYING' refers to (1) full name, (2) date of birth, (3) address on file, (4) entity that issued the policy (5) policy number(s), (6) claim number(s) / identifiers, (7) social security number, (8) (where applicable) Medicare beneficiary identification number or Health Insurance Claim number, (8) (where applicable) the type of accident (i.e. car accident, motorcycle accident, etc.), (9) (where applicable) the type of insurance (i.e. Medpay/PIP/BRB, other No-Fault policy etc.), (10) (where applicable) the claim amount, and (11) (where applicable) the amount of medical service(s) and/or supplies incurred." *Id.* at 6.

- "The term 'CLAIMANT' refers to those persons who (i) had a NO-FAULT INSURANCE POLICY with YOU during the CLASS PERIOD;[8] (ii) were involved in an AUTOMOBILE ACCIDENT during the CLASS PERIOD; AND (iii) submitted a claim under a NO-FAULT INSURANCE POLICY to YOU during the CLASS PERIOD." *Id.* at 5.

- "The term 'UNDERLYING CLAIMANT' refers to a CLAIMANT who was also a Medicare beneficiary."

- "The term 'POTENTIAL UNDERLYING CLAIMANT' refers to a CLAIMANT who was also aged 65 or over." *Id.*

These first two interrogatories would require Defendants to: (1) identify all insureds throughout the country who were covered by a no-fault policy in effect during a six-year period; (2) identify which such insureds were involved in an automobile accident during that period (apparently whether or not this was reported to a Defendant, since the definition of "claimant" is not so limited); (3) identify which such insureds submitted a claim (apparently

---

[8] Defined as the "six years prior to the filing of the original complaint." *Id.* at 5.

*any* claim, not just automobile accident-related claims, based on the definition of "claimant") under a no-fault policy during that period; (4) determine which insureds so identified were Medicare beneficiaries (not just MAO enrollees);[9] (5) also determine which such insureds were aged 65 or over (presumably at the time of the automobile accident, although the interrogatories do not specify) even if not Medicare beneficiaries; and (6) compile and produce detailed information about all such insureds. The amount of documentation and information implicated by these two interrogatories alone, and the amount investigation, manpower, time, and expense that Defendants would be forced to expend searching and culling through that documentation and information to respond to these two interrogatories, plus fourteen others, cannot be overstated. This would be the case even if the interrogatories were properly limited in scope, which they are not.

Similarly expansive in scope, the thirty-eight requests for production seek, for example, a list of "*any and all*" claims (not limited to a certain type) received by each Defendant from any "Target Enrollee" during the Class Period. *See* Exhibit B, p. 7 (emphasis added). "Target Enrollee(s)" are defined as "those persons who (i) had a No-Fault insurance policy issued by [each Defendant] during the class period; (ii) were involved in or injured as the result of a motor vehicle accident during the class period; and (iii) where [*sic*] Medicare enrollees during the class period." *Id.* at 5. With respect to each claim so identified, Plaintiff propounds thirteen requests for additional documentation and information, including all information contained in the claim files and underwriting files for such claims, "all

---

[9] As explained in the Motion to Dismiss, MAOs and Medicare are not one and the same. *See* ECF No. 33 at p. 1 n.2. The putative class here, including Plaintiff's purported assignors, consists solely of MAOs. *See* ECF No. 1 at p. 4 ¶ 3 ("Plaintiff's assignors and the putative Class Members are MAOs that provided Medicare benefits to the Enrollees."). Plaintiff does not, indeed and could not, purport to assert rights belonging to Medicare itself.

deposition transcripts from other litigation instituted on the same claim," and "all of the following information:

| | | | |
|---|---|---|---|
| a. | Health Insurance Claim number; | i. | provider of services; |
| b. | Social Security Number; | j. | any and all documents evidencing payments made by Medicare of [*sic*] MAOs on behalf of a Medicare eligible insured; |
| c. | Surname; | | |
| d. | first initial; | | |
| e. | date of birth; | | |
| f. | sex; | | |
| g. | date of accident; | k. | claims information; and |
| h. | injury or illness; | l. | settlement information. |

*Id.* at 9, 10. On top of this, the document requests also seek "[c]opies of *all documents* in relation to *all Claims* for *all Target Enrollees*." *Id.* at p. 7 (emphasis added). Again, the request is not limited to documents for a certain type of claim, and, even broader than the interrogatories, it is not limited to claims made within the purported class period. Bearing in mind that Plaintiff asserts there are hundreds of MAOs in the putative class, and each MAO may have insured an untold number of claimants, to characterize as substantial the burden these requests for production would impose on Defendants would be an understatement.

The notices of 30(b)(6) deposition are no different, both with respect to the proposed areas of examination and with respect to the documents requested *on top of* those sought in the requests for production. *See* Exhibit C. For instance, in addition to the information about "potential underlying claimants" aged 65 and over sought in the interrogatories, the notices of 30(b)(6) deposition also seek copies of all claim files for all insureds of each Defendant in Florida, who at the time of the claim had a disability, End-Stage Renal Disease, or Lou Gehrig's Disease ("ALS"), and whose claim (not limited to automobile accident-related claims) a Defendant paid during the class period. *Id*. 6. Here again, Plaintiff purports to

impose an exorbitant and unjustifiable burden on Defendants, a burden which, as explained above, can be avoided altogether.

Without a stay of discovery pending determination of the Plaintiff's standing, Defendants would be "forced to expend considerable resources to respond to Plaintiff's discovery requests," including any additional requests that might be served. *See Borislow*, 2014 WL 12580035, at *1. "The Eleventh Circuit instructs that this is precisely when a stay of discovery is warranted." *Id.* Additionally, based on the overbreadth, burdensomeness, and irrelevance of many of Plaintiff's initial discovery requests, it seems inevitable that discovery in this case would involve motion practice.[10] To saddle the Court with these disputes unnecessarily while a case-dispositive motion to dismiss is pending would be a waste of judicial resources.

## CONCLUSION

Plaintiff's litigation history certainly suggests, if not dictates, that the pending Motion to Dismiss is truly meritorious and likely to be granted, thereby disposing of this case entirely and obviating the need for any discovery. The burden that Defendants would sustain if discovery proceeded during the pendency of the Motion to Dismiss is both substantial and avoidable. Plaintiff will suffer no harm if discovery is stayed. In order to preserve the resources of the parties and the Court, Defendants therefore respectfully request an order staying discovery with respect to the requests already served on Defendants, and all other discovery in this matter, pending resolution of the Motion to Dismiss. In the unlikely event that the Motion to Dismiss were to be denied, Defendants further request that Plaintiff's

---

[10] Defendants reserve the right to assert objections to Plaintiff's discovery requests at the appropriate time.

initial discovery requests (attached here as Exhibits A, B, and C) be deemed served as of the

date the Court rules on the Motion to Dismiss.

Respectfully submitted this 8th day of February, 2019.

**COUNSEL FOR DEFENDANTS**

By: *s/ Taylor L. Davis*
Robert W. Fisher
Georgia Bar No. 261951 (*pro hac vice*)
Taylor L. Davis
Florida Bar No. 0089005
Clyde & Co US LLP
271 17th Street NW, Suite 1720
Atlanta, GA  30363
Tel:  (404) 410-3150
Fax:  (404) 410-3151
robert.fisher@clydeco.us
taylor.davis@clydeco.us

Frederick J. Fein
Florida Bar No. 813699
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel:  (305) 446-2646
Fax:  (305) 441-2374
fred.fein@clydeco.us

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MSP RECOVERY CLAIMS, SERIES
LLC and SERIES 16-05-456,

        Plaintiffs,

v.                                Case No.: 6:18-cv-1458-Orl-31GJK

QBE HOLDINGS, INC., QBE
INSURANCE CORP. and QBE
REINSURANCE CORP.,

        Defendants.

_____/

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Defendants' counsel conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised by the foregoing Motion, and the parties were unable to reach an agreement regarding such issues.

        By: *s/ Taylor L. Davis*_____
        Taylor L. Davis
        Florida Bar No. 0089005
        Clyde & Co US LLP
        271 17th Street NW, Suite 1720
        Atlanta, GA  30363
        Tel:  (404) 410-3150
        Fax:  (404) 410-3151
        taylor.davis@clydeco.us

19

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MSP RECOVERY CLAIMS, SERIES
LLC and SERIES 16-05-456,

        Plaintiffs,

v.                           Case No.: 6:18-cv-1458-Orl-31GJK

QBE HOLDINGS, INC., QBE
INSURANCE CORP. and QBE
REINSURANCE CORP.,

        Defendants.
_____/

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on February 8, 2019, I electronically filed **DEFENDANTS'**

**MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY AND**

**INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using the

CM/ECF system which will automatically send email notification of such filing to the

following attorneys of record:

Frank C. Quesada, Esq.
MSP Recovery Law Firm
5000 S.W. 75th Avenue, Suite 300
Miami, FL  33155
fquesada@msprecovery.com
serve@msprecovery.com

Steve I. Silverman
KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.
Miami Center, 27th Floor
201 South Biscayne Boulevard
Miami, FL  33131
ssilverman@klugerkaplan.com

**COUNSEL FOR DEFENDANTS**


By: *s/ Taylor L. Davis*
Robert W. Fisher
Georgia Bar No. 261951 (*pro hac vice*)
Taylor L. Davis
Florida Bar No. 0089005
Clyde & Co US LLP
271 17th Street NW, Suite 1720
Atlanta, GA  30363
Tel:  (404) 410-3150
Fax:  (404) 410-3151
robert.fisher@clydeco.us
taylor.davis@clydeco.us

Frederick J. Fein
Florida Bar No. 813699
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel:  (305) 446-2646
Fax:  (305) 441-2374
fred.fein@clydeco.us