# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MSP RECOVERY CLAIMS, SERIES LLC,**

      **Plaintiff,**

**v.**                                               Case No: 6:18-cv-1458-Orl-31GJK

**QBE HOLDINGS, INC., QBE INSURANCE CORP. and QBE REINSURANCE CORP.,**

      **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 33) filed by the Defendants, the response in opposition (Doc. 40) filed by the Plaintiff, and the reply (Doc. 45) filed by the Defendants.

### I. Background

The Plaintiff in this putative class action, MSP Recovery Claims, Series LLC[1] (henceforth, "MSPRC"), is the purported assignee of certain claims under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act. In simple terms, the MSP Act requires that

---

[1] The proper legal name of the Plaintiff is difficult to ascertain. The caption on the Complaint lists the Plaintiff as "MSP RECOVERY CLAIMS, SERIES LLC, a Delaware limited liability company, SERIES 16-05-456, a designated series of MSP RECOVERY CLAIMS, SERIES LLC." (Doc. 1 at 1) (emphasis in original). In its response to the instant motion, the Plaintiff identifies itself as "MSP Recovery Claims, Series LLC Series 16-05-456." (Doc. 40 at 2). A review of the records available from the Delaware Secretary of State's office does not show that an entity with the "Series 16-05-456" language in its name exists. This suggests that the language is a tag the Plaintiff created for its own recordkeeping, as opposed to it being a legal entity that may bring suit in its own name. Accordingly, the Court has altered the caption to include what appears to be the only proper plaintiff here – MSP Recovery Claims, Series LLC.

entities known as "primary payers," such as insurance companies, must reimburse Medicare (or, as in this case, a Medicare Advantage Organization ("MAO")) for payments for medical items and services that were covered by the insurance company's policy. The MSP Act provides a private right of action against primary payers that fail to provide such reimbursement. MSPRC contends it was assigned claims under the MSP Act by Health First Health Plans, Inc. ("HFHP"), an MAO, and it now seeks to assert those claims as part of a class action against the Defendants.[2] The Defendants argue that HFHP never assigned those claims to MSPRC, which therefore lacks standing to pursue them here. The Defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

**II. Legal Standards**

    A. <u>Attacking Subject Matter Jurisdiction</u>

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).[3] In the case of a facial challenge, the plaintiff is left with safeguards similar to those it possesses when facing a Rule 12(b)(6) motion to

---

[2] As a representative of the claims it seeks to pursue, MSPRC alleges that, in 2011, an individual identified as "E.M." was insured under a no-fault policy issued by the Defendants and enrolled in a Medicare Advantage plan issued by HFHP. (Doc. 1 at 5). After E.M. was injured in an accident, HFHP paid for medical items and services, such as x-rays, that were covered under the no-fault policy, and for which the Defendants did not make timely reimbursement. (Doc. 1 at 6-7). As a result, pursuant to 42 U.S.C. § 1395y(b)(3)(A), MSPRC seeks to recover twice the amount of damages suffered by HFHP. (Doc. 1 at 27-28). MSPRC also asserts a breach of contract claim based on the same facts. (Doc. 1 at 28-29).

[3] See *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

dismiss for failure to state a claim, including that the factual allegations in the complaint must be taken as true. *Id.*

A facial attack requires that the court look at the complaint and, assuming its allegations to be true, determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). In contrast, factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings; in resolving such a challenge, the Court may consider matters outside the pleadings, such as testimony and affidavits. *Id.* Furthermore, in *Williamson*, the former Fifth Circuit held that "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

### B. Standing

The Constitution of the United States limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 1. The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. And third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (internal citations and quotations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

**III. Analysis**

The Defendants raise a factual attack on jurisdiction, based on the Plaintiff's alleged lack of standing. Specifically, the Defendants argue that the agreement by which MSP Recovery purportedly obtained HFHP's claims under the MSP Act was ineffective to transfer any such claims.

MSPRC asserts that HFHP assigned the claims to an entity named MSP Recovery, LLC ("MSP Recovery") via an April 28, 2016 "Recovery Agreement" (Doc. 1-5), and that MSP Recovery subsequently transferred the claims to MSPRC. The Recovery Agreement, which was attached to the Complaint, provides in pertinent part that the

> Client … assigns, transfers, conveys, sets over and delivers to MSP Recovery … any and all of the Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights … to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims".

(Doc. 1-5) at 5. The Client, however, is identified as "Health First Administrative Plans" (henceforth, "Health First Administrative"), not HFHP. (Doc. 1-5 at 2). HFHP is not a party to, or even mentioned in, the Recovery Agreement.

Unlike HFHP, Health First Administrative is not an MAO. (Doc. 40 at 5). According to the allegations of the Complaint, Health First Administrative is HFHP's administrator, performing "[a]ll administrative functions and operations of HFHP," including the issuance of the payments for which HFHP should have been reimbursed under the MSP Act. (Doc. 1 at 10). Based on this

- 4 -

and based on language from the Recovery Agreement that "[a]ny health plan(s) of the Client are encompassed within" that agreement (Doc. 1-5 at 4), MSPRC argues that the Recovery Agreement was effective in transferring HFHP's claims under the MSP Act.  (Doc. 40 at 6-7).

The plain language of the Recovery Agreement, however, refutes this contention.  The agreement transfers "any and all of" *Health First Administrative's* "right, title, ownership and interest in and to all Claims" (Doc. 1-5 at 5), but it does not mention – and therefore has no effect on – HFHP's "right, title, ownership and interest in and to" such claims.  Other courts that have examined the Recovery Agreement or the relationship between these parties have reached the same conclusion.  *See MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17-23841, 2018 WL 1953861, at \*1, \*5 (S.D. Fla. April 25, 2018) ("[Health First Administrative] cannot assign any rights [HFHP] may have under § 1395y(b)(3)(A) to Plaintiff."); *MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Ins. Co.*, No. 17-1541, 2018 WL 2392827 at \*1, \*6 (C.D. Ill. May 25, 2018) ("[B]ecause [Health First Administrative] has not been assigned any rights from HFHP to pursue claims under § 1395y(b)(3)(A), [MSPRC] also has no rights to pursue claims under § 1395y(b)(3)(A)."); *MSP Recovery Claims, Series LLC v. USAA General Indemnity Co.*, No. 18-21626, § WL 5112998, at \*1, \*9 (S.D. Fla. Oct. 19, 2018) ("Plaintiff's elaborate attempt to persuade the Court it always intended HFHP to be the assignor cannot alter the plain language of the Recovery Agreement identifying [Health First Administrative] as the assignor."). MSPRC does not cite any cases that come to the opposite conclusion with regard to HFHP and Health First Administrative.

MSPRC offers a number of additional documents in an effort to establish that the Recovery Agreement was always intended to transfer HFHP's rights under the MSP Act.  These documents include affidavits (Doc. 1-6, 1-7) to that effect from Michael Keeler, COO of both

HFHP and Health First Administrative, who signed the Recovery Agreement in his capacity as COO of Health First Administrative (only). Attached to the second Keeler affidavit are an "Addendum to the Recovery Agreement" and an "Assignment" from HFHP to MSP Recovery, dated June 1, 2018, "for the purpose of confirming, ratifying and memorializing that [HFHP] was an assignor, along with [Health First Administrative] of the Assigned Claims to MSP Recovery, LLC and it is to be given retroactive effect, nunc pro tunc, as of April 28, 2016." None of these documents aid MSPRC's case, as the Recovery Agreement is unambiguous. *See Crawford v. Barker*, 64 So.3d 1246, 1255 (Fla. 2011)[4] ("Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document. In such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls." (citations and quotation marks omitted)).

Finally, MSPRC argues that "it is well settled Florida law that a subsequent agreement that is intended to modify and relate back to a prior agreement, like the Addendum to Recovery Agreement and Health First Assignment here, does so and is to be given effect as of the date of the prior agreement, according to the terms of the subsequent writing." (Doc. 40 at 13). This is not the law, much less well settled law, at least with regard to a scenario such as the one here, and the two Florida law cases cited by the Plaintiff do not stand for such a proposition. In *Reamco Dev. Corp. v. 499 Corp.*, 992 So. 2d 431, 432 (Fla. 4th DCA 2008), a contract for sale provided for a 45-day period during which the buyer could cancel and recover its deposit. Two subsequent addenda to the contract altered the identity of the parties selling the real estate. *Id.* at 433. The buyer cancelled outside the original 45-day period but within 45 days of the second addendum, and then argued that the period restarted after each addendum. *Id.* The Court rejected this

---

[4] The Recovery Agreement is governed by Florida law. (Doc. 1-5 at 8).

argument based on the plain language of the addenda, which specified that the original 45-day cancellation period was not being altered. *Id.* MSPRC cites this case for the proposition that an addendum changing the identity of the parties to a contract relates back to the date of the initial agreement. (Doc. 40 at 13-14). But this is not an accurate assessment of the case because, as the foregoing discussion demonstrates, the issue of whether the addenda "related back" was never raised. Moreover, the identities of the parties to that agreement were changed before the agreement was finalized rather than, as in the case, months or years after the fact.

The second Florida law case cited by MSPRC, *Glenn B. Wright Const. and Development, Inc. v. Cohara*, 87 So. 3d 1276 (Fla. 4th DCA 2012), involved a sales contract between a buyer and a construction company that included an arbitration clause. A month after those parties entered the contract, they and the owner of the construction company signed an addendum whereby the owner promised to buy back the house if the buyer was unable to sell it after listing it for six months. *Id.* at 1277. Some time thereafter, the buyer sued for breach of contract, alleging that the construction company owner had refused to buy back the house as promised. *Id.* The court found that, although the owner was not a party to the original contract, the addendum was intended to incorporate all of its terms, and therefore a valid agreement to arbitrate existed between the buyer and the owner. *Id.* at 1277-78. As with the *Reamco* case, relation back was not an issue in *Glenn B. Wright Const. and Development*, and therefore this decision does nothing to aid MSPRC's argument that Florida law allows it to retroactively alter one of the parties to the Recovery Agreement and its subject matter.[5]

---

[5] MSPRC also cites a number of federal cases, involving transfers of copyrights or patents, where the courts purportedly allowed parties to cure standing issues after the fact. Upon review of those decisions, the Court finds that they are distinguishable, legally and factually, and do not merit extended discussion. For the most part, the cases involve scenarios where a party made a mistake in attempting to transfer property it actually owned rather than, as here, a situation where

### IV. Conclusion

Federal Rule of Civil Procedure 12(h)(3) requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Plaintiff has repeatedly failed, before different courts, to establish that it has standing to assert HFHP's claims. Accordingly, the Court finds that any effort on the Plaintiff's part to amend the Complaint will be futile. In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 33) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 4, 2019.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

the transferor did not own the property that the transferee sought to obtain. *See, e.g., Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1533 (11th Cir. 1994) (where parties orally agreed to transfer copyright, but statute required written agreement for such transfer, court allowed subsequent written transfer agreement between same parties to take effect *nunc pro tunc* to date of oral agreement).