[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 19-11759

_____

D.C. Docket No. 6:18-cv-01458-GAP-GJK

MSP RECOVERY CLAIMS, SERIES LLC,
SERIES 16-05-456, a designated series of MSP Recovery Claims, Series LLC,

Plaintiffs-Appellants,

versus

QBE HOLDINGS, INC.,
QBE INSURANCE CORPORATION,
QBE REINSURANCE CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 15, 2020)

Before MARTIN and NEWSOM, Circuit Judges, and WATKINS,[*] District Judge.

MARTIN, Circuit Judge:

The District Court dismissed for lack of standing this action for damages

under the Medicare Secondary Payer Act (the "Act"), 42 U.S.C. § 1395y(b).

Following careful review, and with the benefit of oral argument, we affirm the

dismissal but remand to the District Court with instructions to dismiss the

complaint without prejudice.

## I.   BACKGROUND

This case involves a complicated statute as well as a large number of

similarly named parties, non-parties, and documents.  We therefore must begin our

opinion with an overview of these moving parts, as well as discussion of the

procedural history prior to this appeal.

A. THE MEDICARE SECONDARY PAYER ACT

Medicare is a federal program that provides insurance to those over the age

of 65.  See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co., 950 F.3d 764, 767

(11th Cir. 2020).  In many circumstances, a beneficiary's healthcare costs are paid

entirely by Medicare.  See id.  But that is not always the case.  Sometimes a third

party has an obligation to pay for a beneficiary's healthcare costs, such as when a

---

[*] Honorable W. Keith Watkins, United States District Judge for the Middle District of
Alabama, sitting by designation.

person enrolled in Medicare "is injured in an automobile accident caused by another driver," id., or if the enrollee "carrie[s] other insurance that cover[s] the same costs" as Medicare, MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1354–55 (11th Cir. 2016).

Before Congress enacted the Medicare Secondary Payer Act in 1980, "Medicare was deemed the 'primary' payer in these instances—meaning that it paid first—and private insurers were 'secondary' payers—meaning that they covered any remainder." Kingsway, 950 F.3d at 767.  The Act was intended "to reduce the costs of Medicare" by transforming Medicare from a primary payer into a secondary payer.  See Allstate, 835 F.3d at 1354–55.  Under the Act, Medicare does not pay "for items or services for which a primary plan has paid or can reasonably be expected to pay."  Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1234 (11th Cir. 2016).  Instead, the burden to make primary payment now falls on "a group health plan, worker's compensation plan or law, automobile or other liability insurance policy or plan, no-fault insurance, or self-insured plan that has made or can reasonably be expected to make payment for an item or service."  Id. at 1233 n.1.  In 1997, Congress enacted the Medicare Advantage program—also known as Medicare Part C—which allows a private insurance company operating as a so-called "Medicare Advantage Organization" ("MAO") to "administer[] the provision of Medicare benefits pursuant to a contract

with" the Centers for Medicare & Medicaid Services.  Id. at 1235.  In other words,

"[t]he legislation creating Medicare Part C made MAOs—like Medicare itself—

secondary payers."  Kingsway, 950 F.3d at 768.

If a primary payer does not make a required payment under the Act, "the

Secretary of Health & Human Services may make a payment conditioned on

reimbursement."  Humana, 832 F.3d at 1234.  "If the Secretary makes a

conditional payment, the primary plan must reimburse the Secretary."  Id.  This

reimbursement may be secured in one of two ways.  The United States may bring

suit against the primary payer.  42 U.S.C. § 1395y(b)(2)(B)(iii).  Alternatively, "a

Medicare beneficiary whose primary plan has not paid Medicare or the

beneficiary's healthcare provider" may assert a private cause of action for twice the

damages otherwise available.  Humana, 832 F.3d at 1234 (citing 42 U.S.C.

§ 1395y(b)(3)(A)).  Our Court has ruled that MAOs may sue under this private

right of action "to recover from primary plans that should pay, but don't."

Kingsway, 950 F.3d at 768.

B. PARTIES AND NON-PARTIES

Here, the Plaintiffs are MSP Recovery Claims, Series LLC ("MSP Series"),

a Delaware limited liability company with its principal place of business in

Florida; and Series 16-05-456, a "series" of MSP Series established under

Delaware law, see Del. Code Ann. tit. 6, § 18-215(a), with its principal place of

business in Florida.[1]  MSP Recovery, LLC ("MSP Recovery") is a Florida limited

liability company associated with but distinct from MSP Series and Series 16-05-

456.  MSP Recovery is not a party to this action.

The Plaintiffs here purport to bring suit pursuant to an assignment by Health

First Health Plans, Inc. ("HFHP"), an MAO.  Health First Administrative Plans,

Inc. ("HFAP") is a separate company that provides all administrative functions on

HFHP's behalf.

The Defendants here are QBE Holdings, Inc., QBE Insurance Corp., and

QBE Reinsurance Corp. (collectively, "QBE").  QBE is a no-fault insurer that

qualifies as a primary payer under the Act.

## C. RELEVANT CONTRACTS

### 1. Recovery Agreement

On April 28, 2016, HFAP assigned to MSP Recovery "all rights to recover

conditional payments" under the Act "on behalf of its [e]nrollees."  This document

is called the "Recovery Agreement."  The Recovery Agreement applies to "MSP

Recovery, and any of its successors and assigns."  According to the Plaintiffs, the

intention behind the Recovery Agreement was to permit MSP Recovery to pursue

---

[1] The District Court found that Series 16-05-456 was not a proper plaintiff because it is not "a legal entity that may bring suit in its own name."  R. Doc. 50 at 1 n.1.  We agree with the Plaintiffs that Series 16-05-456 is due to be reinstated as a party.  Contrary to the District Court's finding, Series 16-05-456, as a series of MSP Series under Delaware law, has the power to "sue and be sued."  Del. Code Ann. tit. 6, § 18-215(b)(1); see Br. of Appellants at 27 n.4.

claims for reimbursement by HFHP under the Act.  MSP Recovery and HFAP

agreed to equally split the proceeds of any suit brought pursuant to the Recovery

Agreement.

Eagle-eyed readers may have caught that, while the Plaintiffs say the

Recovery Agreement intended to assign claims belonging to HF<u>H</u>P, it actually

assigned claims belonging to HF<u>A</u>P.  This fact did not escape the notice of

primary-payer defendants—or federal courts.  In May 2018, a district judge in the

Central District of Illinois dismissed a case brought pursuant to the Recovery

Agreement by MSP Recovery, MSP Series, and two other plaintiffs seeking to

recover unreimbursed amounts allegedly due to HFHP.  <u>MAO-MSO Recovery II,</u>

<u>LLC v. State Farm Mut. Auto. Ins. Co.</u>, No. 1:17-cv-1541-JBM-JEH, 2018 WL

2392827, at *1–4 (C.D. Ill. May 25, 2018).  Recognizing that HFAP—which, as

discussed above, is a provider of administrative services, not an MAO—has no

rights under the Act, the Illinois court held that the Recovery Agreement did not

permit the plaintiffs to assert claims on behalf of HFHP.  <u>See id.</u> at *4–6.

> 2.  <u>Addendum and Nunc Pro Tunc Assignment</u>

A week after the 2018 <u>State Farm</u> decision in Illinois, MSP Recovery and

HFHP made two attempts to cure the apparent defect in the Recovery Agreement.

First, in the "Addendum," HFHP and MSP Recovery provided that HFHP

"was and shall be recognized as an assignor and a party to the [Recovery]

Agreement with MSP Recovery." The Addendum is "to be given retroactive effect, nunc pro tunc, as of April 28, 2016." The Addendum has no additional substantive provisions.

Second, the parties executed a separate agreement called the "Nunc Pro Tunc Assignment." The Nunc Pro Tunc Assignment, independent of the Recovery Agreement, provides for assignment by HFHP to MSP Recovery of "all right, title, interest in and ownership of" HFHP's claims for reimbursement under the Act. Like the Addendum, the Nunc Pro Tunc Assignment is "to be given retroactive effect, nunc pro tunc, as of April 28, 2016."

### 3.  The Earlier Series Assignment

In 2017—after the Recovery Agreement but before State Farm, the Addendum, and the Nunc Pro Tunc Assignment—MSP Recovery assigned its interest in all "'Assigned Claims' [and] 'Claims' . . . as such terms are defined in the Recovery Agreement" to Series 16-05-456. This agreement is called the "Series Assignment." The Series Assignment provides that "[t]he intent of the parties is to transfer any and all rights[,] title[,] and interest that MSP Recovery LLC obtained as an assignee from the assignor."

## D. PROCEDURAL HISTORY

And now to the case before us. On September 6, 2018, MSP Series and Series 16-05-456 filed suit against QBE, seeking to proceed on behalf of a class of

MAOs that QBE allegedly failed to reimburse under the Act.  The Plaintiffs seek

double damages under 42 U.S.C. § 1395y(b)(3)(A) and recovery of unreimbursed

amounts pursuant to 42 C.F.R. § 411.24(e).  The Plaintiffs attached to their

complaint the Recovery Agreement, Addendum, and Nunc Pro Tunc Assignment,

which they say "evidence[]" and "affirm[]" that "HFAP and HFHP intended the

Recovery Agreement" to assign HFHP's rights under the Act.  The Plaintiffs also

attached the Series Assignment.

QBE moved to dismiss for lack of standing.  On April 4, 2019, the District

Court granted that motion.  The court acknowledged the existence of the

Addendum and the Nunc Pro Tunc Assignment.  However, the court refused to

consider either document, holding that the "plain language" of the Recovery

Agreement was "unambiguous" as to the fact that the original assignment was

from HFAP (not HFHP) to MSP Recovery.  The court also held that the Plaintiffs

could not assert standing on the basis that HFHP retroactively assigned its claims

under the Act through the Addendum or the Nunc Pro Tunc Assignment.  The

court's dismissal of the case was with prejudice.  The Plaintiffs timely appealed.

## II.    STANDARDS OF REVIEW

We review de novo a district court's dismissal of a complaint for lack of

standing.  Worthy v. City of Phenix City, 930 F.3d 1206, 1213 (11th Cir. 2019).

When a defendant makes a facial attack on the plaintiff's standing to sue, we must

accept as true the well-pleaded allegations in the complaint.[2]  Mulhall v. UNITE

HERE Local 355, 618 F.3d 1279, 1286 n.8 (11th Cir. 2010).  "[B]ecause an

appellate court must satisfy itself not only of its own jurisdiction, but also of that of

the lower courts in a cause under review," we have an independent obligation to

inquire as to whether plaintiffs in an action have Article III standing.  AT&T

Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356,

1360 (11th Cir. 2007) (quotation marks omitted).

"Questions of contract interpretation are pure questions of law, . . . reviewed

de novo."  Tims v. LGE Cmty. Credit Union, 935 F.3d 1228, 1237 (11th Cir.

2019).  Our interpretation of the documents we must construe here is governed by

Florida law.  See In re Chira, 567 F.3d 1307, 1311 (11th Cir. 2009) ("The

interpretation of private contracts is ordinarily a question of state law." (quotation

marks omitted)).

---

[2] Motions to dismiss for lack of standing "come in two forms, 'facial' and 'factual'
attacks."  See Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  The District
Court characterized QBE's motion to dismiss as raising a factual attack.  On appeal, both sides
agree this was an error "because the documents [supposedly] disproving [the Plaintiffs'] standing
are attached to the Complaint, and therefore part of the pleadings."  Br. of Appellees at 21; see
Br. of Appellants at 18 n.2.  In any event, this point of disagreement with the dismissal order is
immaterial because the District Court "appears to have ultimately treated the challenge as a facial
challenge, as its review was limited to the Complaint and its attachments."  Br. of Appellants at
18 n.2.

### III.   THE PLAINTIFFS' STANDING TO SUE

We analyze the Plaintiffs' standing as follows.  First, we review the requirements of Article III standing, both in general and in the particular context of assignments under the Act.  Second, we hold that the Addendum (but not the Nunc Pro Tunc Assignment) is impermissible parol evidence.  Third, although we hold that the Nunc Pro Tunc Assignment could create standing on the basis of retroactive assignment of claims, the Plaintiffs did not receive any rights under it.  Finally, we decline to consider whether the Recovery Agreement by itself equitably assigned the Plaintiffs HFHP's rights under the Act because the Plaintiffs did not assert this argument before the District Court.

We therefore affirm the District Court's dismissal of this action.

### A.

To have Article III standing, a plaintiff must show that it "(1) suffered an injury-in-fact (2) that is fairly traceable to the defendant's conduct and (3) is redressable by a favorable judicial decision."  MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1317 (11th Cir. 2019); accord Spokeo, Inc. v. Robins, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016).  "Importantly, Article III standing must be determined as of the time that the plaintiff's complaint is filed."  A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co., 925 F.3d 1205, 1212 (11th Cir. 2019) (on rehearing).

"[T]he assignee of a claim has standing to assert [an] injury in fact suffered by the assignor." Tenet, 918 F.3d at 1317 (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 286, 128 S. Ct. 2531, 2542 (2008)).  Under the Medicare Secondary Payer Act, an assignee has standing to sue if "(1) its ultimate assignor . . . suffered an injury-in-fact, and (2) [the assignor's] claim arising from that injury was validly assigned." Id. at 1318.  To the extent the Plaintiffs seek to assert claims under 42 C.F.R. § 411.24, the standing analysis is identical.  The only element of standing that is disputed here is whether there was a valid assignment to the Plaintiffs.

## B.

The Plaintiffs' main argument is that either the Addendum (when read in conjunction with the Recovery Agreement) or the Nunc Pro Tunc Assignment "provide[s] a straight-line path to demonstrate [their] standing."  The District Court rejected this argument, holding that these documents are nothing more than impermissible parol evidence.  The District Court also rejected the Plaintiffs' effort to give retroactive effect to the Addendum and Nunc Pro Tunc Assignment, to the extent they are valid assignment documents.

We share the District Court's view that the Addendum is impermissible parol evidence, although we do not agree that the Nunc Pro Tunc Assignment similarly has no legal significance beyond its value as extrinsic evidence of the

parties' intent regarding the Recovery Agreement.  Nevertheless, we affirm

because neither Plaintiff was assigned rights under the Nunc Pro Tunc Assignment.

      1.  <u>Parol Evidence</u>

An assignment is "a contract between the assignor and the assignee."  3A

Fla. Jur. 2d <u>Assignments</u> § 1 (2d ed. June 2020 update).  Our interpretation of the

assignment documents here is therefore governed by Florida's rules of contract

construction.  <u>See id.</u>

Under Florida law, a contract is interpreted "in accordance with its plain

meaning."  <u>Dear v. Q Club Hotel, LLC</u>, 933 F.3d 1286, 1293 (11th Cir. 2019)

(quotation marks omitted).  "If a contract provision is clear and unambiguous, a

court may not consider extrinsic or parol evidence to change the plain meaning set

forth in the contract."  <u>Spring Lake NC, LLC v. Figueroa</u>, 104 So. 3d 1211, 1214

(Fla. 2d DCA 2012) (quotation marks omitted); <u>see Waveblast Watersports II Inc.</u>

<u>v. UH-pompano, LLC</u>, 291 So. 3d 657, 661 (Fla. 4th DCA 2020) (stating that

extrinsic evidence is only permitted "to explain, clarify, or elucidate" ambiguous

terms).

"It is fundamental that in construing a contract, the intention of the parties

must be determined from examination of the whole contract . . . ."  <u>Cali v.</u>

<u>Meadowbrook Lakes View Condo. Ass'n B Inc.</u>, 59 So. 3d 363, 367 (Fla. 4th DCA

2011) (quotation marks omitted); <u>see Real Estate Value Co. v. Carnival Corp.</u>, 92

So. 3d 255, 260 (Fla. 3d DCA 2012).  Under Florida's "contemporaneous

instrument rule," two separately executed documents may be "construed together

as a single contract" when the documents were "executed by the same parties, at or

near the same time, and concerning the same subject matter."  Life Care Ponte

Vedra, Inc. v. Wu, 162 So. 3d 188, 190 n.2 (Fla. 5th DCA 2015).

On appeal, no party disputes that the text of the Recovery Agreement

unambiguously provides that HFAP, not HFHP, is the assignor.  The question is

thus what effect the Addendum and the Nunc Pro Tunc Assignment have in light

of this lack of ambiguity.

### a. The Addendum is inadmissible parol evidence.

The District Court correctly rejected the Addendum as impermissible parol

evidence.  First, the Addendum has no legally significant provisions of its own.  As

expressly acknowledged in the text of the Addendum, this document exists only to

"confirm[], ratif[y], and memorialize[] the intent of the parties that [HFHP] was an

assignor and intended party to the [Recovery] Agreement."  Furthermore, the

Addendum was not executed anywhere near the same time as the Recovery

Agreement, so its statements about the parties' intent are meaningless under

Florida law.  See Life Care, 162 So. 3d at 190 n.2; cf. Shelby Homes at Millstone,

Inc. v. DaSilva, 983 So. 2d 786, 788 (Fla. 4th DCA 2008) (considering two

agreements "entered into on different days" as one, where the documents were not

in conflict, the later-enacted document "expressly refer[red] to and incorporate[d]" the earlier contract, and less than a year passed between the dates the two documents were executed).

Florida courts would view the Addendum as extrinsic to the Recovery Agreement, and the Recovery Agreement is unambiguous.  As a result, the District Court properly held that the Addendum cannot clarify the intent of the parties to the Recovery Agreement.

### b. The Nunc Pro Tunc Assignment is admissible.

The Nunc Pro Tunc Assignment was executed alongside the Addendum on June 1, 2018.  The District Court held that the Nunc Pro Tunc Assignment, like the Addendum, is impermissible extrinsic evidence of the intent behind the Recovery Agreement.

We view the District Court's reading of the Nunc Pro Tunc Assignment as too narrow.  It is true that, during this litigation, the Plaintiffs have suggested the Nunc Pro Tunc Assignment reflects the intent behind the Recovery Agreement. But the Plaintiffs also argued the Nunc Pro Tunc Assignment by itself "provide[s] a straight-line path to demonstrate" standing.  See R. Doc. 40 at 13 n.7.  In addition, and unlike the Addendum, the Nunc Pro Tunc Assignment exists as its own substantive agreement.  Indeed, the Nunc Pro Tunc Assignment does not even mention the Recovery Agreement.

We are not persuaded by QBE's citation to <u>MSP Recovery Claims, Series</u> <u>LLC v. USAA General Indemnity Co.</u>, No. 1:18-cv-21626-CMA, 2018 WL 5112998 (S.D. Fla. Oct. 19, 2018).  In that case, a district court held that the Addendum and the Nunc Pro Tunc Assignment are both impermissible "extra-contractual evidence of the parties' intent."  <u>Id.</u> at *11.  The complaint in <u>USAA</u> was filed before the Nunc Pro Tunc Assignment was executed.  <u>See id.</u> at *12. And an assignment to sue executed "after the lawsuit was filed" may not give the assignee a valid cause of action.  <u>See Jeff-Ray Corp. v. Jacobson</u>, 566 So. 2d 885, 886 (Fla. 4th DCA 1990) (per curiam) (emphasis omitted).  It thus makes sense that the <u>USAA</u> court limited its examination of the Nunc Pro Tunc Assignment to the document's value as parol evidence, whereas a court faced with a complaint filed after this document was executed could consider it for its substance.

The Nunc Pro Tunc Assignment is an independent contract.  It does not exist to clarify the intent behind the Recovery Agreement.  That being the case, we must consider this document on its own terms.

2. <u>Validity of the Nunc Pro Tunc Assignment</u>

The District Court also rejected the Plaintiffs' assertion that the transfer of rights effected by the Addendum and Nunc Pro Tunc Assignment—even assuming these documents were properly before the court—could retroactively confer standing to sue.  QBE urges us to affirm on this ground as well.  We consider it

only as relates to the Nunc Pro Tunc Assignment (having already decided the Addendum is inadmissible).  As an alternative matter, QBE also renews several arguments made to the District Court on which the court did not rule, including that MSP Recovery never transferred its rights under the Nunc Pro Tunc Assignment to the Plaintiffs.

We disagree with the District Court and QBE regarding the Nunc Pro Tunc Assignment's retroactivity.  However, we agree with QBE that the Series Assignment did not convey MSP Recovery's interests in the Nunc Pro Tunc Assignment to the Plaintiffs.

> a. *A nunc pro tunc assignment with a retroactive effective date can confer standing on a party.*

In order for an assignment with a retroactive effective date to be valid for standing purposes, the assignee must possess the assigned right "on the day it filed the complaint."  Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010).  This requirement cannot "be met retroactively."  Id.; see Jeff-Ray Corp., 566 So. 2d at 886 (holding that an assignment of the right to sue is invalid if it was executed after the lawsuit was filed).  However, "a nunc pro tunc assignment filed before the filing date of the action with an effective assignment date before the action does effect a valid transfer of rights sufficient to confer standing."  Sunrise Med. HHG, Inc. v. AirSep Corp., 95 F. Supp. 2d 348, 437

(W.D. Pa. 2000) (citing, inter alia, Mas-Hamilton Grp. v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998)).

The Nunc Pro Tunc Assignment, which purports to assign HFHP's claims under the Act retroactive to April 28, 2016, was executed on June 1, 2018.  This suit was filed on September 6, 2018.  It seems obvious, then, that the Nunc Pro Tunc Assignment created a valid assignment of claims in this action.

QBE's main argument to the contrary is based on Abraxis, in which the Federal Circuit rejected the retroactive assignment of a patent.  See 625 F.3d at 1366.  While some of the purported assignments at issue in Abraxis were executed before the filing of suit, the court's standing analysis turned on the last-in-time assignment, which occurred "nearly eight months after" the complaint was filed.  Id.  The Nunc Pro Tunc Assignment and Series Assignment, by contrast, were executed before the Plaintiffs filed this lawsuit.  Abraxis therefore does not foreclose the Plaintiffs' arguments here.

> b. *The Series Assignment did not create a valid assignment to the*
> *Plaintiffs of rights under the Nunc Pro Tunc Assignment.*

Under the Nunc Pro Tunc Assignment, HFHP conveyed its rights under the Act to MSP Recovery.  The Plaintiffs in this action are MSP Series and Series 16-05-456.  Again, MSP Recovery is not a party to this action.  The Plaintiffs say the Series Assignment assigned MSP Recovery's claims under the Nunc Pro Tunc

17

Assignment to Series 16-05-456, and therefore standing exists.  This argument

cannot prevail.[3]

The Series Assignment assigned "any and all of [MSP Recovery's] right,

title, ownership and interest in and to the 'Assigned Claims' . . . as such terms are

defined in the Recovery Agreement dated April 28, 2016."  The Series Assignment

provides at its end: "The intent of the parties is to transfer any and all rights . . .

that MSP Recovery LLC obtained as an assignee from [its] assignor."

The Plaintiffs, relying on this statement of "intent," urge us to read the

Series Assignment to extend to any claims MSP Recovery may have been assigned

pursuant to any agreement—including the Nunc Pro Tunc Assignment—not just

the Recovery Agreement.  This we cannot do.  All but one clause of the Series

Assignment refers to MSP Recovery's rights under the Recovery Agreement.  It

would be illogical to read the statement of "intent" as extending beyond the claims

---

[3] In its briefing, QBE only "briefly summarizes" its remaining standing arguments, including that the Series Assignment does not convey to the Plaintiffs a right to sue under the Nunc Pro Tunc Assignment.  Br. of Appellees at 48.  Instead, QBE directs us to its briefing in support of the motion to dismiss.  We pause to note that we disapprove "in the strongest terms" of incorporation by reference of district court briefing.  See Prudential Ins. Co. of Am. v. Sipula, 776 F.2d 157, 161 n.1 (7th Cir. 1985); see also Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1250 (11th Cir. 2015) ("We have held that we will not consider any arguments a party attempts to incorporate by reference to filings in the district court.").  Because, however, QBE's argument regarding the Series Assignment is sufficiently developed in its briefing on appeal, we need not deem this argument waived.  See Boler v. Earley, 865 F.3d 391, 415 n.7 (6th Cir. 2017) (holding that an appellee waives an argument when it "only seeks to incorporate [its] arguments from a motion to dismiss filed before the district court" (emphasis added)); cf. In re Weaver, 632 F.2d 461, 462 n.6 (5th Cir. 1980) ("[O]bjections to standing are never waived and must be raised by an appellate court sua sponte.").

conveyed by the Recovery Agreement to those conveyed by the Nunc Pro Tunc

Assignment.  Furthermore, even if we read the Series Assignment as conveying all

"claims" as <u>defined</u> in the Recovery Agreement—regardless of whether the claims

were assigned in the Recovery Agreement or elsewhere—this would not assist the

Plaintiffs here.  As discussed above, the Recovery Agreement assigned claims

belonging to HFAP.  Thus, even if the Series Assignment provided the Plaintiffs

with an assignment of HFAP's right to sue under the Act, this would not convey

standing in this case, where the Plaintiffs seek to recover based on injury to

HFHP.[4]

C.

Finally, the Plaintiffs argue they received an equitable assignment of

HFHP's right to sue through the Recovery Agreement.  They did not raise this

argument before the District Court.

We may "consider an argument or theory that was not presented to the

district court" when the issue on appeal "presents a pure question of law and

failure to decide it would result in a miscarriage of justice."  <u>Harbourside Place,</u>

<u>LLC v. Town of Jupiter</u>, 958 F.3d 1308, 1323 (11th Cir. 2020).  The Plaintiffs'

---

[4] We take no position on whether MSP Recovery even could have, in 2017, assigned claims established under a future agreement with an effective date of 2016.  That issue is simply not presented here.

fact-specific equitable-assignment argument does not fit within the narrow category of "exceptional" circumstances under which we may rule on an issue raised for the first time on appeal.  See id.  Neither do the Plaintiffs explain how refusal to consider the issue would be a miscarriage of justice.

Without reaching the merits of this argument, we reject the Plaintiffs' contention they were equitably assigned HFHP's right to sue under the Act.

*    *    *

Having failed to assert valid claims on HFHP's behalf under the Act, the Plaintiffs have no legal leg to stand on.  We therefore affirm the dismissal of their complaint.

## IV.    DISMISSAL WITH PREJUDICE

Even though we hold that the District Court correctly dismissed this action, we vacate the dismissal order to the extent it was entered with prejudice.

"A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). QBE nevertheless argues the District Court properly dismissed this case with prejudice because there is no set of facts under which the Plaintiffs could allege standing.  See Oral Argument Recording at 15:48–16:32 (June 11, 2020).  Without speculating about ways to fix the defects in the Plaintiffs' pleading, it does not

"appear[] beyond doubt that the [P]laintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."  Guerrero v. Hauck, 502 F.2d 579, 580 (5th Cir. 1974) (per curiam) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102 (1957)).[5]  As a result, we vacate the dismissal with prejudice and remand to the District Court with instructions to dismiss the complaint without prejudice.

## V.   CONCLUSION

We affirm the District Court's dismissal of the Plaintiffs' complaint for lack of standing.  We vacate the dismissal order to the extent it was entered with prejudice and remand the case to the District Court for the limited purpose of clarifying that the dismissal of this action is without prejudice.  We also instruct the District Court to reinstate Series 16-05-456 to the case caption.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  Id. at 1209.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 15, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-11759-JJ
Case Style:  MSP Recovery Claims, Series L, et al v. QBE Holdings, Inc., et al
District Court Docket No:  6:18-cv-01458-GAP-GJK

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs